UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NANCY M. KING,

    Plaintiff,

v.                                                    Case No. 8:10-cv-2916-T-24AEP

CHUBB & SON,

    Defendant.

_____/

**ORDER**

This cause comes before the Court on a renewed motion for summary judgment filed by Defendant Chubb & Son, and Plaintiff Nancy M. King's response in opposition to the motion. (Dkts. 50, 60, 61.)[1] King, a claims examiner formerly employed by Chubb & Son, alleges that she was terminated because of her age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). She also alleges that she was terminated in retaliation for complaints she made to her employer, in violation of the ADEA. As explained below, the undisputed evidence shows that King cannot prevail on her claims as a matter of law, and therefore, Chubb & Son's motion must be granted.

**I.    Background and Facts**

The following material facts are undisputed in the record:

**A.    King's Employment with Chubb**

Chubb & Son ("Chubb") serves as the manager for a number of insurance companies,

---

[1] In making this ruling, the Court did not consider the evidence filed by King at docket numbers 62 and 63, as such filings were stricken from the record, pursuant to the Court's February 12, 2013 order. (Dkt. 71.)

and provides underwriting and other administrative services to these insurance companies. In 2008, the company's Claims Department was divided into four units: First Party Property, Casualty, Workers Compensation, and Specialty. The Speciality unit handled Fidelity, Director & Officers liability ("D&O"), Errors & Omissions liability ("E&O"), and Fiduciary, Not for Profit Organizations, and Employment Practices liability ("EPL").

King began her employment with Chubb in December of 2001, as a claims examiner in Chubb's Tampa, Florida branch. The Tampa branch served as a satellite office for Speciality Claims from the Dallas, Texas branch. Both branches were located in the company's Southern Zone. At the time of her hire, King was 57 years old.

As a claims examiner, King was responsible for reviewing claims to compare an insured's loss to the coverage provided in the insured's policy and to recommend whether the claim be paid. Until approximately April of 2008, King handled primarily EPL claims, and on limited occasions, also handled certain D&O claims that had employment law implications.

  **B.**  **Introduction of the New Operating Model**

In the spring of 2008, Chubb introduced a new operating model. As a part of that new model, all of the company's low complexity Speciality Claims, including EPL and D&O claims, would be handled in a service center in Simsbury, Connecticut. All low complexity claims from each of the various regional offices would be transferred to the Simsbury service center. The middle to high complexity claims would continue to be handled by the regional offices.

The introduction of the new operating model was not met with overwhelming support from the claims examiners in the Southern Zone. In May of 2008, King voiced her concerns to her supervisor, Alison Stal. Specifically, King commented to Stal that something was "wrong

with the process." King did not complain of age discrimination during this conversation.

During the Southern Zone's implementation of the new operating model, claims examiners were divided into three groups depending upon the complexity of each examiner's claim inventory. Those groups included low complexity claims ("All Risk"), middle complexity claims ("Risk Management"), and high complexity claims ("Risk Resource"). Chubb inventoried each examiner's claim inventory, and then assigned each examiner to one of the three groups depending on the level of the inventory. King was assigned to the "All Risk" group because her inventory primarily consisted of low complexity claims.

Beginning in July of 2008, the first phase of low complexity claims, which included EPL claims, were transferred from the Southern Zone regional offices to the Simsbury service center. The second phase of transfers occurred in the fall of 2008, when low complexity D&O claims were transferred to Simsbury.

  **C.**  **Southern Zone Reduction in Force**

As a result of the transfer of low complexity claims to the Simsbury service center, the overall number of claims being handled in the Southern Zone would be reduced. Chubb anticipated that once the claims were transferred, a total of 13 claims examiner positions would need to be eliminated, as a part of a reduction in force. Eight claims examiner positions were scheduled to be eliminated during the first phase of transfers, and 5 examiner positions were scheduled for elimination during the second phase. Furthermore, of the 8 positions that were scheduled to be eliminated during the first phase, 3 of them were vacant. Thus, Chubb anticipated terminating 5 claims examiners during the first phase.

At the time the new operating model was introduced, there were 18 claims examiners,

3

including King, who handled Speciality Claims for the Southern Zone. All 18 were located in, or assigned to, either the Tampa or Dallas branches.

To determine which of the 18 claims examiners would be selected for elimination, Chubb conducted an audit of the examiners' competency to handle middle to high level complexity Speciality claims. The audit was conducted by supervisors, who followed a standard Claims Skills Assessment guide when conducting their audit. The auditors first randomly selected a set of claim files from each of the 18 examiners. Next, they reviewed those files, and assessed how the examiner handled the files in five areas of competency, which included:

1. <u>Coverage:</u> does the claim examiner use knowledge of the business and intellectual rigor to determine coverage provided;
2. <u>Investigation:</u> does the examiner develop and execute upon an appropriate action plan for investigation of both liability and damages using Specialty Best Practices guidelines including obtaining documents and information;
3. <u>Negotiation and Settlement:</u> does the examiner effectively evaluate potential exposure based on objective criteria to support position, including pursuit of parties with culpability and directly negotiating within value ranges;
4. <u>Case Management:</u> does the examiner clearly outline and document the file in a timely and accurate manner in the following areas: (1) liability and damage issues and analysis; (2) how coverage applies to their liability and damages analysis; and (3) proactive development and execution of an effective claim strategy; and
5. <u>Communication and Service:</u> does the examiner properly and actively communicate with internal and external customers and facilitate the retention and acquisition of accounts.

The auditors then assigned the examiners a score of 1 to 5, based on how well the examiner demonstrated each of the 5 competencies in handling the claim. In addition to providing the numerical rating, the auditors also explained their ratings by providing specific examples of instances in which the examiner did or did not demonstrate competency. In an effort to ensure the assessments were objective, the claims examiner's files were evaluated by someone other

than the examiner's direct supervisor.

### D. Selection of King's Position for the Reduction In Force

An audit of King's claims files was conducted in the manner described above by Natalie Plumlee, a supervisor in the Southern Zone of the Specialty Claims unit. King was one of four or five claims examiners that Plumlee audited. In conducting the audits, Plumlee assessed each examiner's ability to demonstrate the five competencies, using the Claims Skills Assessment guide provided to each auditor.

King's audit revealed that she had not sufficiently demonstrated the requisite skills needed to handle the middle to high complexity Specialty claims that would remain in the Southern Zone regional offices. Specifically, with respect to coverage, Plumlee assigned King a rating of 1.0, finding that she did not observe King consistently identifying coverage issues in files involving multiple parties, and noted that in some of the files, King failed to conduct a coverage analysis. Plumlee also noted that King had sent coverage letters to insureds that were either incomplete or potentially incorrect.

With respect to her investigation competency, Plumlee assigned King a rating of 1.5. Plumlee noted that King did not effectively demonstrate that she consistently drove the investigation process. In some instances, King either failed to conduct, or failed to complete, an investigation. Regarding King's competency to negotiate and settle, Plumlee assigned King a rating of 1.5. Plumlee observed that King either made no attempt at early resolution or failed to focus on relevant coverage issues.

Regarding King's competency to manage cases, Plumlee assigned King a rating of 1.5. She observed that in some instances, King had not done any analysis of exposure or liability.

Plumlee further noted that she did not observe instances where King collaborated with defense counsel on defense strategy, or proactively pursued settlement opportunities.

Finally, with respect to communication and service, Plumlee assigned King a rating of 1.0. Plumlee could not find any evidence that King consistently demonstrated her ability to use her technical expertise to influence a business partner on an issue. Plumlee noted that, in one particular file, King did not prepare appropriately for an internal committee meeting and did not communicate effectively.

Once Plumlee completed her audits, she forwarded them to the Human Resources Department. Plumlee was not involved in the decision to select certain examiners for termination.

Judith Sammarco, Senior Vice President of Human Resources, received the completed audits from the auditors and calculated the average skills assessment score for each of the 18 examiners, based on the results of the audits. King's skills assessment score, once averaged, was 1.3. Next, Sammarco inserted the average skills assessment scores into an Employee Summary Worksheet for each examiner. Also included on the Employee Summary Worksheet were scores for each examiner's tenure and their 2005 and 2006 performance evaluation scores. The skills assessment score, which accounted for 70 percent of the final score, was added to the tenure score and the 2005 and 2006 performance evaluation score, to obtain a final score for each examiner. King's final score was 1.87.

Next, Sammarco ranked the claims examiners from highest to lowest, based upon their final score, to determine which positions would be eliminated. The five claims examiners with the lowest scores were then selected for the first phase of the reduction in force, which was

scheduled to occur in August of 2008. The scores of these five examiners ranged from 1.82 to 1.94. King was among the five examiners with the lowest final score.

Of the five selected for termination, three of the examiners were younger than King, and two of them were under the age of 40. At the time of their selection for termination, two of the claims examiners, Patrice Wilson and Latasha Grinnell, were 38 and 32 years old, respectively, and Jim Danford was 56 years old. According to Chubb, the five examiners were selected for termination because they did not demonstrate the necessary competencies needed to handle middle to high level complexity claims, and when their scores were averaged and combined with their tenure scores and performance evaluation scores, they received the five lowest final scores.

On or about July 29, 2008, King voiced her displeasure regarding the new operating model and its impact on the morale of the claims examiners. King wrote, "What has taken place within Chubb from April 1, 2008 to the present has adversely affected the performance and morale of the majority of claims examiners in specialty claims." She explained her view that the project "was actually a euphemism for a campaign to encourage attrition of present very experienced employees to make way for centralization and employment of lower skilled, lower paid workers with less experience." She continued, "Chubb has lost individuals with years of experience and will continue to lose a lot of dedicated, skilled employees." Finally, she stated, "I believe it will take a few years for the Company to feel the effects of this project and understand the loss of talent."

On August 1, 2008, King and the four other claims examiners with the lowest final scores were advised that they were selected for the Southern Zone reduction in force, and that their positions were being eliminated. Each of the affected claims examiners, including King, was

encouraged to apply for other positions within the company. King did not apply for any available positions.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. Discussion

### A. Chubb Is Entitled to Summary Judgment on King's Termination Claim.

King alleges that Chubb discriminated against her by selecting her position for elimination during the first phase of the Southern Zone reduction in force because of her age, in violation of the ADEA. The ADEA prohibits an employer from "discharg[ing] any individual or

otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court has interpreted the ADEA's requirement that an employer took adverse action "because of" age as meaning that age must be "the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009). In other words, "[t]o establish a disparate-treatment claim under the plain language of the ADEA . . . , a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* Thus, the burden of persuasion remains on the plaintiff to prove her ADEA disparate-treatment claim, and she may do so either by direct or circumstantial evidence. *Id.* at 2351.

### 1. King Has No Direct Evidence of Discrimination.

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption. Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination." *Bass v. Bd. of County Comm'rs.*, 256 F.3d 1095, 1105 (11th Cir. 2001) (quotations, alterations, and citations omitted). Furthermore, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). When refuting direct evidence of discrimination, the defendant's burden "is one of persuasion and not merely production." *Bass,* 256 F.3d at 1104.

King vaguely recounts the circumstances of a meeting that was attended by claims examiners and Peter Vogt, Senior Vice President of the Southern Zone, during which the examiners questioned Vogt about the purpose of the new operating model. King asserts that "the

9

Tampa unit referred to itself as 'old and proud,' referring to the fact that the examiners and the secretary were all older workers as of 2008." (Dkt. 60, p. 11.) As evidence of this comment, King cites to the deposition of claims examiner Mary Alpaugh. This deposition is not a part of the record, and therefore, does not constitute evidence upon which the Court may rely.

Nevertheless, even if Alpaugh's deposition was a part of the record and evidenced that such a comment was made, it does not constitute direct evidence of age discrimination for numerous reasons. To constitute direct evidence, a statement must "(1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001). This comment was not alleged to have been made by a decisionmaker, but rather, by "the Tampa unit," who are presumably the claims examiners. Furthermore, there is no evidence that such a comment related to the decision to select King or any other claims examiner for elimination. The comment does not reveal blatant discriminatory animus without inference or presumption, and therefore, it does not constitute direct evidence of discrimination. *See Standard*, 161 F.3d at 1330.

## 2. King Cannot Prove a Circumstantial Case of Discrimination

To evaluate an age discrimination claim supported by circumstantial evidence, the Court uses the traditional *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting analysis.[2] *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th

---

[2] The Court acknowledges that the Supreme Court, in *Gross*, stated that it "has not definitively decided whether" the *McDonnell-Douglas* evidentiary framework is appropriate in the ADEA context. *Gross*, 120 S. Ct. at 2349 n.2. However, even after *Gross*, the Eleventh Circuit and district courts have continued to analyze ADEA claims under this framework. Therefore, the Court will continue to employ the *McDonnell-Douglas* framework, but will do so

Cir. 2000) (en banc) (applying the *McDonnell Douglas* framework to circumstantial evidence in an ADEA case). Under this framework, the plaintiff must raise an inference of discrimination by establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. at 1824. The burden then shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the alleged discrimination. *Id.* Once the defendant produces such a reason, the plaintiff must then prove that the legitimate reason was a mere pretext for discrimination. *Id.* at 804, 93 S. Ct. at 1826. To avoid summary judgment, the plaintiff must produce sufficient evidence to show "that the employer intentionally discriminated against [her] because of [her] [age]." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

                         a.        **King cannot establish a *prima facie* case of age discrimination.**

To establish a *prima facie* case of age discrimination under the ADEA when there is a reduction in force, King must demonstrate: (1) that she is a member of the protected age group; (2) that she was adversely affected by an employment decision; (3) that she was qualified for her current position, or to assume another position at the time of discharge; and (4) that the evidence could lead a factfinder reasonably to conclude that her employer intended to discriminate on the basis of age. *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003). To establish intent, the plaintiff must offer evidence that could lead a fact-finder to conclude either "(1) that [the] defendant consciously refused to consider retaining a plaintiff because of [her] age, or (2) [the] defendant regarded age as a negative factor in such consideration." *Allison v. Western Union. Tel. Co.*, 680 F.2d 1318, 1321 (11th Cir. 1982).

---

with the understanding that King must establish that age was the but-for cause of her termination–not simply a motiving factor.

King presented little to no evidence of an intent to discriminate. To the contrary, the undisputed record establishes that King's position was eliminated because she failed to demonstrate that she possessed the competency to handle middle to high complexity claims. The undisputed record shows that the claims files of all 18 claims examiners were audited to assess the examiners' competency. Claims Skills Assessment Score Sheets were completed for each examiner, and then were forwarded to the Human Resources Department. The examiners' individual skills assessment scores were combined with their tenure score and their 2005 and 2006 performance evaluation scores, to obtain a final score for each examiner.

The examiners were then ranked from highest to lowest based on their final scores, and the five examiners with the lowest scores were selected for elimination. King ranked among the five examiners with the lowest final scores, and therefore, her position was eliminated.

King has presented no evidence whatsoever that age was a factor in the assessment of the claims examiners' competency, or in their ranking. In fact, King has not presented any evidence that the persons conducting the audits and calculating the scores knew her age. Furthermore, three of the examiners whose positions were eliminated were younger than King, and two of them were under the age of 40.

      **b.** **King cannot establish that Chubb's legitimate, nondiscriminatory reasons for eliminating her position were pretextual.**

Even assuming that King established a prima facie case of age discrimination, she has failed to present sufficient evidence that Chubb's legitimate, nondiscriminatory reasons for eliminating her position in the reduction in force were pretextual.

In determining whether the plaintiff has established pretext, "[a] plaintiff is not allowed

to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. "Provided that the proffered reason[s] [are] one[s] that might motivate a reasonable employer, an employee must meet th[ose] reason[s] head on and rebut [them], and the employee cannot succeed by simply quarreling with the wisdom of th[ose] reason[s]." *Id.* To rule in favor of Chubb, the Court "need not determine that [Chubb] was correct in its assessment of the employee's performance; it need only determine that [Chubb] in good faith believed plaintiff's performance to be unsatisfactory." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991.)

King has presented no evidence that Chubb's proffered reasons for eliminating her position in the reduction in force–i.e., that she failed to demonstrate that she possessed the necessary competencies to handle middle to high complexity claims, and received one of the five lowest final scores–was pretext for age discrimination. The record is undisputed that Chubb conducted the same audit, using the same standards and methods, for each of the 18 claims examiners. It is further undisputed that, based on that audit, King ranked among the five lowest scores. King cannot dispute that, based on the audit, the company believed that she lacked the necessary competencies to handle middle to high complexity claims.

King attempts to cast doubt on Chubb's reasons for her termination by arguing that the process by which Chubb assigned each examiner to one of three groups depending on the level of inventory (i.e., "All Risk," "Risk Management," or "Risk Resource") favored younger employees. She asserts that the older employees were placed in the "All Risk" category where the workload was "punishing." She asserts that Chubb "shuffled younger people to protect them from the reorganization while imposing nearly impossible burdens on the older examiners such

13

that not every file could be maintained according to 'best practices.'" (Dkt. 60, p. 17.)

The Court categorically rejects this assertion because it is not supported by the record. King has not presented any evidence–beyond her own vague, self-serving assumptions–that younger claims examiners were somehow shielded from the reduction in force, while older claims examiners were not.

King also attempts to show that Chubb's reasons for her termination were pretextual by asserting that Chubb refused to hire her for the position left vacant by claims examiner John Salgado when he resigned. The Court rejects this argument because King has presented no evidence that she was denied an opportunity to apply for, or be considered for, any position because of her age.

In summary, the Court finds that King has not established a prima facie case of age discrimination, or that Chubb's legitimate, nondiscriminatory reasons for eliminating her position in the reduction in force were pretext. The undisputed record shows that Chubb believed that King failed to demonstrate that she possessed the necessary competencies to handle middle to high complexity claims, and that her position was selected for elimination because of that failure. King has not provided sufficient evidence that age was the "but-for" reason for her termination. *Gross*, 129 S. Ct. at 2350. Accordingly, Chubb is entitled to summary judgment on this claim.

### B. Chubb Is Entitled to Summary Judgment on King's Retaliation Claim.

To establish a *prima facie* case of retaliation, the plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there existed a causal connection between the two events. *Pennington v. City of Huntsville,*

261 F.3d 1262, 1269 (11th Cir. 2001). If the plaintiff establishes a *prima facie* case, the employer may rebut that case by proffering a legitimate, non-retaliatory reason for its actions. *Id.* Once the employer satisfies its burden, the presumption of retaliation is eliminated. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason is merely pretext for prohibited, retaliatory conduct. *Id.*

### 1. King cannot establish a *prima facie* case of retaliation.

King asserts that her written complaint on or about July 29, 2008 concerning the new operating model constituted a protected activity, and that Chubb terminated her in retaliation for making such a complaint. A complaint is protected if the complainant demonstrates a "good faith, reasonable belief that the employer engaged in unlawful employment practices. It is critical to emphasize that a plaintiff's burden has both a subjective and objective component." *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).

King's written complaint does not amount to a protected activity because she did not complain of discrimination or any other unlawful employment practice. Her complaint concerned her belief that the new operating model adversely affected the morale of the claims examiners, and that it was a "euphemism" to encourage attrition of "experienced" examiners in favor of "less experienced" examiners. King's written complaint did not concern age bias, but rather, expressed her perceived bias in favor of less experienced workers. This complaint cannot objectively be viewed as a complaint about age discrimination, or any other unlawful employment practice.

### 2. King cannot establish that Chubb's legitimate, nonretaliatory reasons for eliminating her position were pretextual.

Furthermore, even assuming that King established a *prima facie* case of retaliation, she

has failed to present sufficient evidence that Chubb's legitimate, nonretaliatory reasons for eliminating her position were pretextual. King's position was eliminated in the reduction in force because, as evidenced by the undisputed record evidence, she did not sufficiently demonstrate the necessary competencies to handle middle to high complexity claims and she received one of the five lowest final scores. King has not presented any evidence to suggest that Chubb's reason for eliminating her position was pretextual, and she "cannot succeed by simply quarreling with the wisdom" of Chubb's decision. *Chapman*, 229 F.3d at 1030.

### IV. Conclusion

In conclusion, viewing the entirety of the record in the light most favorable to King, there are no genuine issues of material fact as to her claims of age discrimination or retaliation. Accordingly, Chubb & Son's Renewed Dispositive Motion for Summary Judgment (Dkt. 50) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant Chubb & Son, and against Plaintiff Nancy M. King, to close this case, and to terminate any pending motions. The pretrial conference previously scheduled in this case for March 14, 2013 is hereby cancelled, and this case is removed from the Court's April 2013 trial calendar.

**DONE AND ORDERED** at Tampa, Florida, this 26th day of February, 2013.

Copies to:

Counsel of Record

SUSAN C. BUCKLEW
United States District Judge